J-A24001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIN M. FETTERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FETTERS | : | |
| | : | |
| Appellant | : | No. 332 MDA 2018 |

Appeal from the Order Entered January 12, 2018
In the Court of Common Pleas of York County
Civil Division at No(s): 2013-FC-2259-15

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED JANUARY 07, 2019**

Christopher Fetters (Husband) appeals *pro se* from the order entered January 12, 2018, in the Court of Common Pleas of York County,[1] directing Husband to pay Erin M. Fetters (Wife) $115,000.00 from an American Funds[2] IRA, "for attorney's fees, interest, et cetera, as a total payment from that account." Order, 1/12/2018 at 2. Based upon the following, we affirm in part, reverse in part, limited to the amount of the interest and attorney's fees award, and remand.

The parties are well acquainted with the history of this case, and therefore we discuss only the facts pertinent to the order under appeal.

---

[1] The parties' divorce decree was entered on July 11, 2017.

[2] In the parties' settlement agreement, the American Funds accounts are referred to as "Amerifund" accounts. **See** N.T., 6/26/2017. **See also** N.T., 1/3/2018, at 11 (Husband explaining, "For the record, it was American Funds. It was misquoted in the document in the equitable distribution.").

On June 26, 2017, the parties placed a settlement agreement on the record before the Divorce Master, and entered a Stipulation that stated in part, the agreement "resolved all claims and issues associated with the divorce," that the agreement "may be entered as an Order of Court and may be incorporated into but shall not be merged with the Divorce Decree," that the agreement "is a contractual agreement," and that it "is effective and enforceable immediately, except as otherwise expressly stated in the agreement." Stipulation, 6/27/2017, ¶¶ 1, 4, 5 and 6.

The settlement agreement that was placed on the record, states, in relevant part:

> The ABBOT [sic] annuity retirement valued at $109,270, husband will receive $81,006 and wife will receive $28,264 of the marital value.

> In essence, any QDRO [qualified domestic relations order[3]] necessary to effectuate the intent of this distribution will be signed by both parties, and wife will receive the $28,264 in value. Any remaining balance in that annuity will be received by husband.

> As it relates to the ABBOTT Laboratory stock retirement plan, it is valued at $137,998. Wife will receive $110,998 in value and the remaining value in the ABBOTT Laboratory stock retirement plan will remain with husband.

---

[3] A QDRO is an order "which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." **Smith v. Smith**, 938 A.2d 246, 248 n.3 (Pa. 2007). The actual qualifying of the domestic relations order is done by the employer's pension administrator. **Id.**

The Amerifund [sic] IRA valued at $1,243 will be transferred to QRDO to wife.

The Amerifund [sic] IRA valued at $90 will be transferred to wife as well.

All retirement plans shall be transferred via QDRO or any necessary transfer according to the administrators of the plans.

N.T., 6/26/2017, at 4.

On December 28, 2017, Wife filed a motion to compel Husband to execute a QDRO.[4] The matter came before the motions court on January 3, 2018. At that proceeding, Husband appeared *pro se* and informed the court he had combined three accounts referenced in the settlement agreement — $110,098.00 (Abbott Laboratory stock retirement plan), $1,243.00 (American Funds IRA), and $90.00 (American Fund IRA) — into one American Funds account to enable transfer to Wife without another QDRO. Specifically, the amount of $112,331.00 owed to Wife from the various accounts was held in

---

[4] The motion stated, in part:

On or about June 26, 2017, the parties participated in a Settlement Conference to which they came to an Agreement. The transcript on record states, "[I]n essence, any QDRO necessary to effectuate the intent of this distribution will be signed by both parties, and wife will receive $28,264 in value …. Barring any unforeseen circumstance, do you agree that the signing of any documentation effectuating QDRO's within 30 days of their receipt." Husband stated, "I agree." A true and correct copy of the Transcript is attached hereto as "Exhibit B."

Motion to Compel Defendant to Execute Qualified Domestic Relation Order, 12/28/2017, at ¶4.

one American Funds IRA account that also included "a couple thousand more" of Husband's money. *See* N.T., 1/3/2018, at 16. Husband further indicated he had no dispute with the QDRO that was referenced in the motion to compel, relating to the Abbott annuity retirement ($28,264.00), and he would sign it.

The trial court determined that Husband had failed to comply with the settlement agreement by unilaterally moving the funds and obviating the need for the other QDRO that had been prepared pursuant to the settlement agreement. The trial court ordered Husband to pay Wife $115,000.00 from the American Funds IRA account. Thus, Wife received the amount due under the settlement agreement, $112,331.00, and a combined interest and attorney's fees award of $2,669.00. The trial court also ordered Husband to pay the actuary costs for the QDROs.

The trial court placed the following order, entered January 12, 2018, on the record after hearing argument on the motion:

> AND NOW, this 3rd day of January, 2018, the Court is looking at page 4 of the transcript from a Divorce Masters' proceeding where wife was to receive $110,998 for an Abbott Laboratory Stock retirement account. Husband took it upon himself to move that account and combine everything into one American Fund account. Wife was also to receive an American Fund IRA valued at $1,243, and an American Fund IRA at [sic] valued at $90. The total of those would be $112,331.
>
> Wife caused a QDRO to be prepared, which is now apparently not needed, as Husband has moved the funds into the American Funds IRA. Therefore, Husband today has executed the documents required from American Funds to move all of the money to Wife. **Wife will receive $115,000 from that account for attorney's fees, interest, et cetera, as a total payment from that account.**

- 4 -

Additionally, within 10 days from today's date, Husband will provide the documentation from that account showing the transfers in as well as the interest earned from the date of transfer to present. If Attorney Hobbs feels that a different or higher amount is owed to Wife, he may bring that back to the Court's attention if the parties cannot reach an agreement as to what wife should be receiving. The Court makes it clear that Wife is entitled to the interest on the money from the date of the marriage settlement agreement. That is not a windfall to Husband because of the delay.

**Husband will be responsible for all costs to Jonathan Cramer [the actuary] for preparation of the QDRO's due to the confusion that he created by moving the funds unilaterally.** He will be responsible for paying that amount within 30 days of receiving a statement from Mr. Cramer. Wife will be responsible for the $20 fee to American Funds when the paperwork is filed by her attorney.

Order, 1/12/2018 (emphasis added).

On January 23, 2018, Husband filed a motion for reconsideration, which was granted by the trial court on February 2, 2018. On February 8, 2018, the trial court reaffirmed its prior order of January 12, 2018. On February 12, 2018, Husband filed this timely appeal.[5]

Husband presents nine questions for this Court's review:

1. Whether [Wife's] attorney committed flagrant fraud upon the court which should have rendered the entire motion void[?]

---

[5] On February 14, 2018, the trial court ordered Husband to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Husband filed his Rule 1925(b) statement on March 6, 2018. On March 23, 2018, the trial court issued a Rule 1925(a) opinion, relying on the reasoning set forth in its order of February 8, 2018, affirming its prior order of January 12, 2018.

2. Whether the Agreement allowed [Husband] to transfer 401k retirement funds by a type of transfer other than a QDRO without acting in bad faith or breaching the contract[?]

3. Whether the Equitable Distribution Agreement was a contract with unambiguous clauses which rendered it unmodifiable by the trial court under Pennsylvania contract law[?]

4. Whether actuary fees, interest, attorney's fees, or costs were contained in a Breach of Contract clause (or for any reason whatsoever) within the four corners of the Agreement[?]

5. Whether the trial court awarded attorney's fees, interest, and costs due to a Breach of Contract clause or for apparent contempt[?]

6. Whether the trial court improperly awarded sanctions, sua sponte, in Business Court without a hearing and without a motion for Summary Judgement by [Wife?]

7. Whether the trial court improperly calculated interest without a scintilla of evidence for IRA and 401k stock and mutual fund accounts which did not accrue interest[?]

8. Whether the trial court improperly awarded attorney's fees without a scintilla of evidence or without referencing a lodestar calculation[?]

9. Whether the trial court improperly awarded actuary costs without evidence and without verifying the contents of the invoice as they related to the matters before the court[?]

Husband's Brief at 10-12.[6], [7]

_____

[6] Wife has not filed a responsive brief.

[7] Although Husband identifies nine "Question[s] Presented For Review," his brief contains 11 arguments. We will only address Husband's arguments to the extent they are "stated in the statement of questions involved or fairly suggested thereby." Pa.R.A.P. 2116(a).

At the outset, we state the principles that guide our review of a marriage settlement agreement:

> "A marital [settlement] agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise."

> ****

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa.Super. 2007) (internal citations omitted).

In his first issue, Husband claims Wife's attorney "committed a fraud upon the court." Specifically, Husband contends Wife's attorney committed a fraud upon the court by failing to follow local rules, making false statements in the motion to compel execution of the QDRO, allowing the unauthorized practice of law by a paralegal, and violating the Rules of Professional Conduct. However, Husband's Rule 1925(b) statement only raises the issues that "the

- 7 -

instant motion [was] based on multiple and fatal errors, as defined by local rules," and that "'facts' submitted by [Wife's] attorney in the instant motion were objectively false." Husband's Concise Statement, 3/6/2018, at ¶¶2, 4. Therefore, we address Husband's "fraud upon the court" claim only with regard to the two issues preserved in the concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In his brief, Husband claims Wife's attorney failed to follow York County Civil Local Rules 205.1(a)(2)(i) and 208.2(d)(2).[8] *See* Husband's Brief at 39. Husband argues the motion to compel only referenced the QDRO for the Abbott annuity ($28,264), which he did not dispute. He reasons that had

---

[8] YCCiv. 205.1(2)(i) states that "An original proposed order ... shall accompany each document ...". YCCiv. 208.2(d) provides:

**Rule 208.2(d) Motions – Certification of Concurrence.**

(1) A motion to the court shall contain a certification by the moving party that the party has sought concurrence in the motion from each party and that each party has either concurred in the motion or contests the motion.

(2) A motion that is represented to be uncontested shall contain a certification by counsel for the moving party that counsel has conferred with all interested parties, the full text of the motion and proposed order has been disclosed, and that the requested relief is uncontested. A motion which is uncontested and which contains this certification need not be presented in a session of motions court, but shall be presented to the court pursuant to YCCiv. 205.1.

Wife's attorney followed the local rules, and had he been presented with and signed the Abbott annuity QDRO, there would have been no need for the motion to be argued in court.

We recognize Wife's attorney did not include a proposed order and a certificate of concurrence with the motion as required by the local rule. However, YCCiv. 126 provides, in relevant part,

> (a) These rules shall be liberally construed to secure the just, speedy and inexpensive determinations of every action, though the Court expects the parties to comply with these rules.
>
> (a)[sic] The court at every stage of any action may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

YCCiv. 126(a), (a).

At the January 3, 2018 proceeding, while Husband indicated his readiness to execute the Abbott annuity QDRO, he also informed the court he had combined the other accounts with funds due to Wife into one account to enable transfer of funds to Wife without the need for another QDRO. *See* N.T., 1/3/2018, at 3. Thus, notwithstanding Husband's willingness to sign the Abbott annuity QDRO, Wife always had the right to seek enforcement of the settlement agreement with regard to the other QDRO that had been prepared pursuant to the settlement agreement. As such, Husband's substantial rights were not affected by Wife's attorney's failure to attach a proposed order and a certificate of concurrence. Accordingly, we find no abuse of discretion in the trial court's decision to not enforce the local rules.

Furthermore, to the extent Husband claims "facts submitted by [Wife's] attorney in the instant motion were objectively false," we find this argument provides no basis upon which to grant relief. While the record of the January 3, 2018 proceeding reveals there was confusion about which QDRO was at issue, nothing in this record suggests Wife's attorney willfully misrepresented facts in the motion to effect "fraud upon the court." Furthermore, Husband had the opportunity to refute the allegations in the motion when the motion came before the court. Therefore, Husband's first claim warrants no relief.

In his second issue, Husband raises the question whether the settlement agreement allowed him to transfer 401k retirement funds by a type of transfer other than a QDRO without acting in bad faith or breaching the contract. Husband contends "[m]ovement of the funds into one retirement vehicle could not possibly be construed as a material breach by any reasonable person." Husband's Brief at 64. This argument is unavailing.

It is important to point out the instant proceeding was a motion to compel Husband to execute the QDRO. Parties to a marriage settlement agreement may enforce their agreement under the Divorce Code. Section 3105 of the Divorce Code, "Effect of agreement between parties" states, in part:

> **(a) Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had

been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a). Furthermore, under Section 3502(e) of the Divorce Code courts have broad powers to enforce compliance "with an order of equitable distribution … or with the terms of an agreement as entered into between the parties. …" 23 Pa.C.S. § 3502(e) (emphasis added). *See Miller v. Miller*, 983 A.2d 736, 745 (Pa. Super. 2009) (holding trial court was empowered to award Wife attorney's fees under sections 3502(e)(7) and 3105(a) of the Code where Husband failed to comply with terms of settlement agreement). Therefore, Husband's second argument warrants no relief.

Husband's third claim raises the question whether the parties' settlement agreement was a contract with unambiguous clauses which rendered it unmodifiable by the trial court under Pennsylvania contract law. Husband's fourth claim raises the question whether actuary fees, interest, attorney's fees, or costs were contained in a Breach of Contract clause (or for any reason whatsoever) within the four corners of the settlement agreement. We will discuss the third and fourth issues together.

The crux of Husband's argument as to both issues is that the trial court erred in awarding Wife interest, attorney's fees and actuary fees, when the settlement agreement did not provide for these damages. We disagree. As already stated, pursuant to 23 Pa.C.S. § 3502(e), the trial court has broad authority to enforce the parties' agreement. Specifically, the Divorce Code provides:

**(e) Powers of the court.** — **If, at any time, a party has failed to comply with** an order of equitable distribution, as provided for in this chapter or with **the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order**:

    (1) enter judgment;

    (2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;

    (3) **award interest on unpaid installments**;

    (4) order and direct the transfer or sale of any property required in order to comply with the court's order;

    (5) require security to insure future payments in compliance with the court's order;

    (6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;

    (7) **award counsel fees and costs**;

    (8) attach wages; or

    (9) find the party in contempt.

23 Pa.C.S. § 3502(e) (emphasis added).

Therefore, the trial court had authority to fashion a remedy in favor of Wife, including the awards of interest, attorney's fees and actuary fee. As such, no relief is due on this claim.

- 12 -

Nor are we persuaded by Husband's fifth argument, namely, that the trial court converted the motion to compel into an indirect criminal contempt complaint. The trial court explicitly stated that it did not impose indirect criminal contempt sanctions. Furthermore, as discussed above, the trial court's authority derives from Section 3502(e). Therefore, Husband's argument is misplaced.

We address Husband's final four issues together. In his sixth issue, Husband argues the trial court improperly awarded sanctions, *sua sponte*, in motions court without a hearing. In the seventh issue, Husband contends the trial court improperly calculated interest without a scintilla of evidence for IRA and 401k stock and mutual fund accounts that did not accrue interest. In his eighth issue, Husband asserts the trial court improperly awarded attorney's fees without a scintilla of evidence or without referencing a lodestar calculation. In his ninth issue, Husband contends the trial court improperly awarded actuary costs without evidence and without verifying the contents of the invoice as they related to the matters before the court.

It bears note that Wife's motion to compel sought "attorney's fees, costs and other such relief as the Court may deem necessary and/or proper." Motion to Compel, 12/28/2017, at 3. The trial court awarded Wife a total sum of $115,000.00, which represents $112,331.00 owed to Wife under the

settlement agreement,[9] plus a combined award for attorney's fees and interest of $2,669.00. In addition, the trial court ordered Husband to pay the actuary fee.[10]

Based on our review of the record and Section 3502(e), we find no basis upon which to disturb the trial court's decision that Wife is entitled to interest, attorney's fees, and actuary costs. At the January 3, 2018, proceeding, Husband admitted he had combined accounts to enable transfer of funds to Wife without a QRDO.

However, with regard to the **amount** of the award of interest and attorney's fees, we find the trial court should have held an evidentiary hearing. **See** 23 Pa.C.S. § 3502(e) (providing remedies that may be awarded after a hearing and showing of noncompliance). **See also Habjan v. Habjan**, 73 A.3d 630, 643 (Pa. Super. 2013) (holding a trial court has authority under 23 Pa.C.S. § 3502(e)(7) to award attorney's fees to a spouse as a consequence of noncompliance by the other spouse); **Isralsky v. Isralsky**, 824 A.2d 1178, 1192 (Pa. Super. 2003) (discussing considerations in determining reasonable attorney's fees).

_____

[9] The total amount of $112,331.00 includes the individual amounts of $110,098.00 (Abbott Laboratory stock), $1,243.00 (American Funds IRA), and $90.00 (American Funds IRA).

[10] The actuary fee amount does not appear in the record. Husband, in his brief, states the amount is $950.00. **See** Husband's Brief at 74.

While we recognize the motion to compel was listed as a matter for motion court, the record discloses Husband filed a motion for reconsideration in which he averred the court granted interest and attorney's fees without conducting a hearing pursuant to Section 3502(e). **See** Husband's Motion for Reconsideration, 1/23/2018, at ¶53. Consequently, in light of Section 3502, which requires a hearing, we reverse the court's order, limited to the amount of the interest and attorney's fees award ($2,669.00), and we remand for an evidentiary hearing.

Finally, with regard to Husband's claim the trial court improperly awarded actuary costs without evidence and without verifying the contents of the invoice, we conclude Husband waived this argument. Because Husband did not raise this issue in his 1925(b) statement, it has not been preserved for review. **See** 1925(b)(4)(vii).

In summary, we reverse the trial court's order as to the amount of the interest and attorney's fees award ($2,669.00), and remand for an evidentiary hearing. Otherwise, we affirm.

Order affirmed in part, reversed in part, limited to the amount of the interest and attorney's fees award. Case remanded for an evidentiary hearing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/7/2019</u>